UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff,                  Case No. 21–cr–20590

v.                                   Hon. F. Kay Behm

Bobby Boseman,

       Defendant.

_____

**Brief in Support of
Defendant's Supplemental Brief to
"Defendant's Motion to Suppress Evidence
and Request for an Evidentiary Hearing" (ECF No. 40)**

Defendant Bobby Boseman filed a motion to suppress evidence obtained after a warrantless search of his residence located at 1915 Tebo Street in the City of Flint, on August 3, 3021. He also challenged the searches conducted pursuant to search warrants on February 26, March 16 and August 3, 2021. On May 9, 2023, this Court conducted an evidentiary hearing about the warrantless search conducted on August 3, 2021. The testimony of the officers at that hearing supported Boseman's argument that Officers Albert Essix and Vincent Villareal had no objective reasonable belief that an emergency-aid situation existed, i.e., that there were any females in the

residence that were seriously injured, threatened with serious injury or in immediate need of emergency assistance when they illegally entered Mr. Boseman's backyard and entered his residence without the existence of exigent circumstances. The fact that the back door was ajar was not an invitation to enter and could not be interpreted as consent to enter the residence.

The same analysis applies to the second protective sweep and federal search warrant obtained and executed later in the day on August 3rd. Both the second protective sweep and federal warrant were based on the fruits of the earlier illegal entry.

When Officers Essix and Villareal arrived at the Tebo residence, they knew that there was a man inside because Villareal spoke to him through the front security door, which was mirrored and tinted. (Hrg. Trans., ECF No. 58, PageID.300, 302, 314, 324, 336, 348). Villareal could see that the man who answered the door wore a white shirt. *Id.* at 348.

Officers Essix and Villareal encountered three women on the scene at different intervals while conducting their investigation. *Id.* at 302–303, 306. The first woman said "she was there looking for her cheating boyfriend." *Id.* at 303. Officer Essix subsequently encountered the second female and inquired "if she was one the females we were there to check the welfare of,

and she said, 'No,' and I asked her if she had just come out of the house, and she said, 'No,' she had just jumped over the fence and was cutting through the yard." *Id.* The third woman was observed exiting the backdoor of the house and did not respond to Essix's question about her being a victim, except to shake her head no and walked away. *Id.* at 306. There were no shouts for help, sounds of fighting or assault coming from inside the house, *Id.* at 330, 363–364, or reason to believe that exigent circumstances existed for the officers to enter the house without a search warrant. The officers next obtained consent, permission or a warrant to enter after asking for permission to enter. *Id.* at 326–327, 357.

Officer Essix knew that the 911 call had been made about 40 minutes before he arrived, and that the caller was no longer at the scene and did not want to wait for the police. *Id.* at 317–318. The police did not know if there were any females in danger or seriously injured at the Tebo residence. *Id.* at 322. The officers did not know if the three women they encountered on the Tebo property were the women that were the subject of the welfare check. The police did not have any evidence to suggest that a crime had occurred or that exigent circumstances existed. Forty minutes had passed since the 911 call was made, which means that any alleged exigent circumstances could have changed, and whatever the 911 caller believed about two women being

victimized, there was no evidence of those allegations when the police arrived 40 minutes later.

The police acted on second-hand information from their Sergeant Scott Watson, who told the officers to "take this seriously," that the 911 caller's allegations were credible because he had "prior dealings" with the Tebo address. *Id.* at 299, 342–343. There was no elaboration, details, or specific and articulable facts provided to give rise to a reasonable suspicion that a crime had been committed to support Watson's opinion, an officer who was not at the scene and played no role in the investigation. *Terry v Ohio*, 392 US 1, 30-31; 88 S CT 1868; 20 L Ed 2d 889 (1968).

Officer Villareal wanted to get inside of the house, whether he had exigent circumstances or not. He asked, "[c]an I come in?" when talking to the male through the front door. *Id.* at 348. He received no response, no consent or permission. Villareal also tried to turn the front doorknob, attempting to enter, but it was locked. *Id.* at 326–327. Finally, Officers Virrareal and Essix walked right in to Boseman's residence through the open back door after allegedly calling out "city of Flint Police Department" and getting no response. *Id.* at 308.

WHEREFORE, Defendant moves this Honorable Court to suppress at trial all evidence seized from the warrantless entry of his Tebo residence

on August 3, 2021, and evidence seized as the result of search warrants executed on February 25, 2021, March 13, 2021, and August 3, 2021.

Respectfully submitted,

/s/ *Henry M. Scharg*
HENRY M. SCHARG (P28804)
Attorney for Defendant
30445 Northwestern Hwy,
Suite 225
Farmington Hills, MI 48334
Office:(248) 596-1111
Email: hmsattyatlaw@aol.com

Dated: May 30, 2023

## Certificate of Service

I certify that on May 30, 2023, I electronically filed the above Supplemental Brief with the Clerk of the Court using the CM/ECF system, which served the document(s) to the parties of record.

/s/ *Henry M. Scharg*
HENRY M. SCHARG (P28804)
Attorney for Defendant
